**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AARON THOMAS<br>1112 Almond Road, Apt. E<br>Pittsgrove, NJ 08318<br><br>        Plaintiff,<br>v.<br><br>QUEST DIAGNOSTICS, INC.<br>*d/b/a* QUEST DIAGNOSTICS<br>3 Giralda Farms<br>Madison, NJ 07940<br><br>        Defendant. | CIVIL ACTION<br><br>DOCKET NO.:<br><br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Aaron Thomas (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. This action has been initiated by Plaintiff against Quest Diagnostics Inc. *d/b/a* Quest Diagnostics (*hereinafter* referred to as "Defendant") for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq.*),[1] the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §2601 *et seq.*), and the New Jersey Law Against Discrimination ("NJ LAD"). Plaintiff asserts, *inter alia*, that he was discriminated against and unlawfully terminated by Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claims under the ADA are referenced herein for notice purposes. Plaintiff has filed retaliation claims under the ADA with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff intends to amend his complaint to include claims pending before the EEOC once such claims are fully and administratively exhausted. These claims will identically mirror claims already filed herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for violations of federal laws.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the District of New Jersey.

## PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Defendant Quest Diagnostics Inc. *d/b/a* Quest Diagnostics is a clinical laboratory that maintains collaborative agreements with various hospitals and clinics through several sites located in the United States (including in New Jersey), with a corporate office as set forth in the above caption.

8. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

2

## FACTUAL BACKGROUND

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Starting in or about January of 2011, Plaintiff was employed by Defendant for over six years as a phlebotomist – floating between several of Defendant's New Jersey sites.

11. Toward the end of Plaintiff's employment with Defendant, he was working solely at one of Defendant's sites located in the Unite Here Health Center at 1801 Atlantic Avenue, Atlantic City, New Jersey.

12. While working at the Atlantic City, New Jersey site, Plaintiff was primarily supervised by Elizabeth Griffin (*hereinafter* "Griffin").

13. During his employment with Defendant, Plaintiff was a hard-working employee who performed his job well.

14. At all relevant times during Plaintiff's employment with Defendant, Plaintiff suffered from several disabilities, including depression, PTSD, and bi-polar disorder (in addition to other complications).

15. As a result of his aforesaid health conditions, Plaintiff suffered from depression, panic-attacks, fear, exhaustion, and anxiety, which (at times) limited his ability to work, sleep, and engage in social interaction – among other daily life activities.

16. Despite his aforesaid serious health conditions and limitations, Plaintiff was still able to perform the duties of his job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times (discussed further *infra*).

17. Plaintiff apprised Defendant's management, including but not limited to Griffin, of his aforesaid disabilities and need for medical accommodations throughout and until the end of his employment with Defendant.

18. For example, Defendant required a block medical leave from in or about November of 2017 until on or about May 6, 2018, to treat and care for his aforesaid serious health conditions.

19. Plaintiff returned from his aforesaid block medical leave on or about May 7, 2018, without any restrictions or limitations.

20. On or about May 17, 2018, **only 10 days** after Plaintiff's return from medical leave (discussed *supra*), Griffin and Defendant's Human Resources personnel met with Plaintiff and informed him that they had received complaints that Plaintiff was allegedly creating a hostile work environment in the office.

21. For example, Defendant's management had alleged that Plaintiff told someone that he was "bat shit crazy"; however, upon Plaintiff's information and belief, a co-worker, Missy (last name unknown, *hereinafter* "Missy"), commented on multiple occasions to other co-workers that Plaintiff was "bat shit crazy."

22. Plaintiff was placed on administrative suspension pending an investigation by Human Resources personnel, Megan Bassler (*hereinafter* "Bassler"), into the alleged complaints that Plaintiff was creating a hostile work environment.

23. On or about May 29, 2019, Plaintiff was informed that after allegedly conducting an investigation into the complaints lodged against Plaintiff, Defendant was terminating Plaintiff's employment.

4

24. Defendant's purported reason for terminating Plaintiff – that he was allegedly creating a hostile work environment – is completely pretextual because (1) Plaintiff consistently worked hard for Defendant and performed his job well; (2) Plaintiff had not received any complaints regarding his behavior at work prior to requesting and/or taking leave for his serious health conditions; in fact, upon information and belief, several of Plaintiff's physician co-workers were pleased when he returned to work following his leave and were happy with his performance; (3) Plaintiff was terminated shortly after informing Defendant's management of his serious health conditions and need for accommodations; and (4) Plaintiff was terminated **only 10 days** after requesting leave to treat and care for his serious health conditions (a reasonable accommodation).

## COUNT I
### Violation of the New Jersey Law Against Discrimination (NJ LAD)
### ([1] Actual/Perceived/Record of Disability Discrimination; and [2] Retaliation)

25. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

26. At all relevant times during Plaintiff's employment with Defendant, Plaintiff suffered from several disabilities, including depression, PTSD, and bi-polar disorder (in addition to other complications), which at times limited him ability to perform some daily life activities – discussed *supra*.

27. Plaintiff requested reasonable accommodations from Defendant, including medical leave to treat and care for his serious health conditions.

28. Plaintiff was terminated **only 10 days** after returning from a medical leave of absence taking to treat and care for his serious health conditions.

5

29. Therefore, Plaintiff believes and avers that he was terminated from Defendant because of: (1) his known and/or perceived health problems; (2) his record of impairment; and/or (3) in retaliation for his requested accommodations.

30. These actions aforesaid constitute violations of the NJ LAD.

## COUNT II
### Violations of the Family and Medical Leave Act ("FMLA")
**(Retaliation & Interference)**

31. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

32. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

33. Plaintiff requested leave for medical reasons from Defendant, his employer, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

34. Plaintiff had at least 1,250 hours of service with Defendant during his last full year of employment.

35. Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

36. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

37. In or about November of 2017, Plaintiff requested FMLA-qualifying leave for his aforesaid serious health conditions.

38. Following his request for FMLA-qualifying leave, Plaintiff commenced a medical leave of absence and eventually returned to work on or about May 6, 2018.

39. Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; and/or (2) by considering Plaintiff's FMLA leave needs in making the decision to terminate him.

40. These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B. Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: January 11, 2019